# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TAMMY JURGENS**, as personal representative of the Estate of Linda Brown, deceased,<br><br>        Plaintiff,<br><br>        v.<br><br>**COLUMBIA COUNTY**, an Oregon municipality; **BRIAN PIXLEY**, in his official capacity; **SOPHIE FRAZIER**, in her individual and official capacities; **JUSTEN JUMP**, in his individual and official capacities; **ALEX BUNCH**, in his individual and official capacities; **CORRECT CARE SOLUTIONS, LLC**, d/b/a Wellpath LLC; **MADELINE GRIFFITH**, in her individual capacity; and **KELSIE HANSON**, in her individual capacity,<br><br>        Defendants. | Case No. 3:22-cv-00300-IM<br><br>**OPINION AND ORDER GRANTING COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND STAYING CLAIMS AGAINST WELLPATH DEFENDANTS** |

Jacob Johnstun, Johnstun Injury Law LLC, 1935 St. Helens Street, Suite A, St. Helens, OR 97051. Dale Henry Pugh, Dale Pugh Law, 11374 Xavier Drive, Suite 101, Westminster, CO 80031. Attorneys for Plaintiff.

David C. Lewis and Lauren E. Nweze, Citycounty Insurance Services Litigation, 15875 Boones Ferry Rd., Suite 1469, Lake Oswego, OR 97035. Attorneys for Defendants Columbia County, Brian Pixley, Sophie Frazier, Justen Jump, and Alex Bunch.

Heath S. Fox and Ross C. Taylor, Fox Ballard PLLC, 1325 Fourth Avenue, Suite 1500, Seattle, WA 98101. Attorneys for Defendants Correct Care Solutions, LLC, Madeline Griffith, and Kelsie Hanson.

**IMMERGUT, District Judge.**

Before this Court are two motions for summary judgment. The first is a Motion for Summary Judgment ("Wellpath MSJ"), ECF 76, filed by Defendants Correct Care Solutions, LLC d/b/a Wellpath, LLC ("Wellpath") and its employees, nurses Madeline Griffith and Kelsie Hanson (collectively "Wellpath Defendants"). The second is a Motion for Summary Judgment ("County MSJ"), ECF 78, filed by Defendants Columbia County and its individual officers Deputy Alex Bunch, Corporal Sophie Frazier, Corporal Justen Jump, and Sheriff Brian Pixley (collectively "County Defendants").

This case concerns the death of Linda Brown on October 23, 2020, while she was in custody at the Columbia County Jail. Fourth Amended Complaint ("Fourth Am. Compl."), ECF 43 ¶¶ 25, 36. On February 24, 2022, Plaintiff Tammy Jurgens filed this action as the personal representative of Ms. Brown's estate. Complaint, ECF 1.

Plaintiff has three grounds for her claims. First, she sues all Defendants under 42 U.S.C. § 1983 for a violation of Ms. Brown's Fourteenth Amendment rights, alleging Defendants failed to provide necessary medical care. Fourth Am. Compl., ECF 43 ¶¶ 39–52. Second, Plaintiff sues all Defendants for wrongful death under Oregon law. *Id.* ¶¶ 53–55. Third, she sues County Defendants for disability discrimination under Title II of the Americans with Disabilities Act ("ADA"). *Id.* ¶¶ 56–60. Plaintiff seeks economic and noneconomic damages for all claims,

punitive damages for her § 1983 and ADA claims, attorney's fees, costs, and expert witness fees for her § 1983 claims, and pre-judgment and post-judgment interest on all amounts due. *Id.* at 18.

Both sets of Defendants move for summary judgment on all of Plaintiff's claims. County MSJ, ECF 78 at 1; *see* Wellpath MSJ, ECF 76. Defendants also seek summary judgment on Plaintiff's request for pre-judgment interest on her wrongful death claims, County MSJ, ECF 78 at 27–28; Wellpath MSJ, ECF 76 at 19, and her request for punitive damages on her § 1983 and ADA claims. County MSJ, ECF 78 at 32–33; Wellpath MSJ, ECF 76 at 17. County Defendants additionally seek summary judgment on Plaintiff's wrongful death claims against the individual County Defendants and Plaintiff's claim for non-economic damages on her ADA claim. County MSJ, ECF 78 at 25, 31.

This Court heard oral argument on Defendants' Motions on August 15, 2024. ECF 95. On November 19, 2024, counsel for Wellpath notified this Court that Wellpath had filed a voluntary bankruptcy petition under Chapter 11 and that the bankruptcy court stayed all lawsuits against Wellpath and non-debtor defendants. Notice, ECF 97. On January 28, 2025, the Parties notified this Court that the Bankruptcy Court had lifted the stay as to the non-debtor defendants. Joint Status Report, ECF 99. Although this Court would be prepared to rule on Wellpath's summary judgment motion, in light of the stay, this Court declines to do so until the stay is lifted. Accordingly, this case is STAYED as to Wellpath Defendants. Wellpath Defendants are ORDERED to file a status report on the status of the bankruptcy proceeding in sixty (60) days and every sixty (60) days thereafter.

Based on the briefs, oral argument, and record of this case, this Court GRANTS the County Defendants' Motion for Summary Judgment. Plaintiff has failed to establish that Corporal Jump and Deputy Bunch violated her constitutional rights, and, in any event, the

individual officers are entitled to qualified immunity. Plaintiff also has not shown evidence that Corporal Frazier or Sheriff Pixley played any role in causing her death. Plaintiff has additionally failed to show a municipal policy to support her § 1983 claim against Columbia County. As to negligence, there is no evidence that any County Defendant was a foreseeable cause of Ms. Brown's death. On her ADA claims, Plaintiff has not shown that she has standing.

## BRIEF BACKGROUND

The following undisputed facts are taken from the parties' materials related to the County Defendants' Motion and viewed in the light most favorable to Plaintiff.

On September 26, 2020, Ms. Brown was taken by ambulance to Providence St. Vincent Medical Center ("Providence") following complaints of nausea, vomiting, pain, and chronic leg pain. Medical Records, ECF 88-3, Ex. 2 at 2. She was hospitalized at Providence through October 5, 2020. *Id.* Doctors found that she had low magnesium levels and gave her a magnesium supplement. *Id.* at 5, 44.

On October 12, 2020, Ms. Brown was arrested in Columbia County on charges of driving under the influence and reckless driving. Joint Statement of Agreed Material Facts ("Agreed Facts"), ECF 69 ¶ 3. She was booked into Columbia County Jail that afternoon. *Id.* ¶ 5.

On October 23, 2020 at 6:15 a.m., deputies found Ms. Brown unresponsive in her cell during breakfast service. *Id.* ¶ 27. Paramedics declared Ms. Brown deceased at 6:50 a.m. *Id.* The parties agree that Ms. Brown died from acute cardiac arrhythmia or dysrhythmia, not alcohol withdrawal or complications of liver cirrhosis. *Id.* ¶¶ 29–30.

## LEGAL STANDARDS

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing the absence of any genuine

issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A court views the evidence in the light most favorable to the non-movant and draws all reasonable inference in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the [non-movant's] position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). There is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## DISCUSSION

This Court first addresses County Defendants' evidentiary objections and Plaintiff's voluntarily dismissed claims. Next, the Court addresses the § 1983 claims, beginning with the liability of the individual County officers, then the *Monell* claim against Columbia County. This Court then addresses the state law wrongful-death claims and the ADA claim. This Court concludes that all of Plaintiff's claims against County Defendants fail as a matter of law.

### A. Evidentiary Disputes

County Defendants object to several exhibits that Plaintiff offers in support of her response to the motions for summary judgment. County Reply, ECF 89 at 1–3. The Court addressed these evidentiary issues as stated on the record at oral argument.

### B. Voluntarily Dismissed Claims

Plaintiff seeks to voluntarily dismiss her § 1983 claim against Corporal Frazier, her ADA claims against Corporal Jump, Corporal Frazier, Deputy Bunch, and against Sheriff Pixley in his individual capacity, her claim for pre-judgment interest on her state claims, and her claim for

punitive damages against Columbia County. Pl. Am. Resp. to County MSJ, ECF 87 at 2, 23, 30,

33. Although Plaintiff's filings simply state that she "voluntarily dismisses" these claims,

Plaintiff was required to seek leave of court before doing so. *See* Fed. R. Civ. P. 41(a)(2). When

a plaintiff seeks voluntary dismissal after the defendants have moved for summary judgment, she

may withdraw her claim only with court approval and "on terms that the court considers proper,"

unless the parties stipulate to dismissal. Fed. R. Civ. P. 41(a)(2); *see Concha v. London*, 62 F.3d

1493, 1506 (9th Cir. 1995).

    The Ninth Circuit has directed that a district court "should" grant a request for voluntary

dismissal "unless a defendant can show that it will suffer some plain legal prejudice as a result."

*Smith v. Lenches*, 263 F.3d 972, 975 (9th Cir. 2001); *see Westlands Water Dist. v. United States*,

100 F.3d 94, 97 (9th Cir. 1996) (defining legal prejudice). County Defendants do not oppose

Plaintiff's voluntary dismissals. County Reply, ECF 89 at 3, 16, 18, 20. In the absence of a

showing of legal prejudice, this Court dismisses these claims under Rule 41(a)(2).[1] County

Defendants' Motion for Summary Judgment on these claims is denied as moot.

## C.  Section 1983 Claims

    Plaintiff's remaining § 1983 claims against County Defendants are against Corporal

Jump, Deputy Bunch, Sheriff Pixley, Columbia County. Summary judgment is warranted on

Plaintiff's § 1983 claims against all County Defendants because no reasonable jury could find

that any of these defendants violated Ms. Brown's constitutional rights.

---

[1] Neither party addresses whether this dismissal should be with or without prejudice, and Rule 41 itself "does not contain a preference for" either form of dismissal, *Hargis v. Foster*, 312 F.3d 404, 407 (9th Cir. 2002). In light of the age of this case and the defendants' "effort and expense involved in preparing for trial" on these claims, this Court determines that dismissal should be with prejudice. *Burnette v. Godshall*, 828 F. Supp. 1439, 1443 (N.D. Cal. 1993).

1.   **Corporal Jump and Deputy Bunch**[2]

No reasonable jury could find that Deputy Bunch and Corporal Jump were deliberately indifferent to a substantial risk of serious harm, or that their conduct caused Ms. Brown's injuries. Alternatively, they are entitled to qualified immunity.

### a.   Fourteenth Amendment Violation

"Individuals in state custody have a constitutional right to adequate medical treatment." *Sandoval*, 985 F.3d at 667 (citing *Estelle v. Gamble*, 429 U.S. 97, 105–05 (1976)). For pretrial detainees, this right arises under the Fourteenth Amendment's Due Process Clause. *Id.*

Claims of inadequate medical care for a pretrial detainee are evaluated under an objective deliberate indifference standard. *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018) (citing *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1070 (9th Cir. 2016) (en banc)). The plaintiff must show: "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." *Id.* at 1125. At issue here are the third and fourth prongs.

---

[2] Plaintiff brings suit against Corporal Jump and Deputy Bunch in both their personal and official capacities. The Court will dismiss the claims against the individual officers in their official capacities because they are duplicative of Plaintiff's claim against the County, and considers in this section only Plaintiff's claim against these defendants in their personal capacities.

### i. Corporal Jump

Corporal Jump once escorted Ms. Brown to medical for an issue unknown to him. Pl. Am. Resp. to County MSJ, ECF 87, Ex. 2 at 05:29–:52; 06:25–:30. He was aware that Ms. Brown had made multiple requests to other officers to go to a hospital. *See id.* at 07:42–51; Deposition of Justen Jump ("Jump Depo."), ECF 87-3 at 9. Describing one such request, Corporal Jump stated: "She pushed the button, screamed and yelled about how she needed to go to the hospital, and then she wouldn't tell us why and we'd be like, 'hey you need to put in a request,' which, like I said, Deputy Ford . . . helped her. He spent like 20 or 30 minutes helping her, making sure she could talk to the docs." Pl. Am. Resp. to County MSJ, ECF 87, Ex. 2 at 7:11–:30.

On October 18, 2020, Ms. Brown asked Corporal Jump to call an ambulance because she had a bladder infection. Pl. Am. Resp. to County MSJ, ECF 87, Ex. 1 at 00:17–:46; *see also* Jump Depo., ECF 79-6 at 14. Corporal Jump informed Ms. Brown that her request "wasn't going to happen" because a bladder infection could be handled by jail medical staff and told her to submit a medical request. Pl. Am. Resp. to County MSJ, ECF 87, Ex. 1 at 00:26–:48; *see also* Jump Depo., ECF 79-6 at 14. Ms. Brown responded: "Oh shit, take your fucking medics and shove 'em. You've been talking about sending me to the medics since last night." Pl. Am. Resp. to County MSJ, ECF 87, Ex. 1 at 00:49–:55. Approximately ten minutes later, after completing his rounds, Corporal Jump relayed this information in person to the jail medical team and asked them to see her without a medical request. Jump Depo., ECF 79-6 at 15–16. That afternoon, Corporal Jump transported her to a medical visit, Jump Depo, ECF 79-6 at 17–18, where she was seen by jail medical staff, Agreed Facts, ECF 69, ¶¶ 20–22. This was the only time Ms. Brown directly asked Corporal Jump for medical care. Jump Depo., ECF 87-3 at 9.

Finally, Corporal Jump knew "for a fact" that Ms. Brown was "a hardcore alcoholic before she was here" and a "kinda hardcore detoxer," so the officers would watch her more closely. Pl. Am. Resp. to County MSJ, ECF 87, Ex. 2 at 12:00–:20. Other officers had told Corporal Jump that Ms. Brown "had been searching for a way out of the jail through a medical process. That's it. Just be aware of that, you know. She might ask you to go to the hospital, you know. Take it with a grain of salt." Jump Depo., ECF 87-3 at 9.

Corporal Jump had no further contact with Ms. Brown or any other role in her medical care. Plaintiff argues that Corporal Jump's decision to deny Ms. Brown's request for an ambulance created a substantial risk of serious harm because (1) "Ms. Brown was suffering from dangerously low levels of magnesium, phosphate, and electrolytes in the background of alcohol use disorder," Pl. Am. Resp. to County MSJ, ECF 87 at 7–8 (citing Victor Vines Report, ECF 87-4 at 6), (2) she "'described vomiting and diarrhea, and weakness in her legs and difficulty walking'"; *id.* (quoting (Victor Vines Report, ECF 87-4 at 6), (3) "If corrections officers had appropriately communicated with jail medical staff, and if jail medical staff followed its own protocol, Ms. Brown 'would have been more thoroughly assessed and likely sent for hospital evaluation and care based on her GI symptoms, preventing her [death;]'" *id* (quoting Victor Vines Rebuttal Report, ECF 87-5 at 3), and (4) "Confining Ms. Brown to her cell without appropriate intervention placed her" at "high risk for cardiac arrhythmia," *id.* (quoting Victor Vines Report, ECF 87-4 at 4).

A prison official may be liable for failure to provide necessary medical treatment only if that officer is "aware that an inmate is suffering from a serious acute medical condition." *Sandoval*, 985 F.3d at 680. Plaintiff has provided no evidence that a reasonable officer in Corporal Jump's position would have known about any of Ms. Brown's medical problems. From

Corporal Jump's perspective, he was only aware that Ms. Brown walked slowly and used the wall to support herself, Pl. Am. Resp. to County MSJ, ECF 87, Ex. 2 at 05:10–30, and that she reported having a bladder infection. Corporal Jump responded to this report by promptly obtaining medical care for Ms. Brown, even though she had not filled out a medical request. Under these circumstances, Corporal Jump did not ignore a "substantial risk" of serious harm to Ms. Brown that "a reasonable official in the circumstances would have appreciated." *Gordon*, 888 F.3d at 1125. There is no evidence from which a jury could conclude that a reasonable officer in Corporal Jump's position would have understood that Ms. Brown faced a substantial risk of serious harm.

Plaintiff appears to argue that there is a dispute of material fact whether Corporal Jump personally informed the jail medical staff about Ms. Brown's request within ten minutes because "County Defendants only cite to Corporal Jump's deposition in support, and Plaintiff is unaware of any other record documenting that this ever took place," and because a potential bladder infection is not mentioned in the jail medical records. Pl. Am. Resp. to County MSJ, ECF 87 at 9. This does not create a genuine issue of material fact. "[I]t is unremarkable that the defendants could not otherwise corroborate their personal conversations. That is likely to be the case regarding most conversations between two people, and does not disqualify either participant from testifying about the exchange . . . ." *S.E.C. v. Phan*, 500 F.3d 895, 909–10 (9th Cir. 2007) (holding "uncorroborated" declarations are admissible on motion for summary judgment so long as they are not conclusory).

As to causation, no jury could find that Corporal Jump was a legal cause of Ms. Brown's death. There is no evidence in the record that any bladder infection was related to Ms. Brown's

death by cardiac arrhythmia. Further, there is no evidence that placing Ms. Brown under the withdrawal protocol would have led to someone catching and curing her fatal arrythmia in time.

### ii. Deputy Bunch

There is even less evidence concerning Deputy Bunch. Deputy Bunch's interactions with Ms. Brown were limited to two general requests for medical treatment on October 18, 2020. Plaintiff does not allege that Deputy Bunch was aware of Ms. Brown's medical conditions, that a reasonable officer should have been aware of any medical need, or that Deputy Bunch played any part in causing Ms. Brown's death.

On October 18, 2020, while Deputy Bunch was serving meal trays in Ms. Brown's pod, Ms. Brown yelled, "Give me medics!" to Deputy Bunch. Pl. Am. Resp. to County MSJ, ECF 87, Ex. 6 at 00:00–:10; *see also* Agreed Facts, ECF 69 at ¶ 18. Deputy Bunch said: "What's that?" Ex. 6 at 00:11–:12. Ms. Brown yelled: "Medics!" Ex. 6 at 00:12; *see also* Agreed Facts, ECF 69 at ¶ 18. Deputy Bunch said, "Medics?" Ex. 6 at 00:13. She said, "Now!" *Id.* at 00:14; *see also* Agreed Facts, ECF 69 at ¶ 18. He said, "Why?" Ex. 6 at 00:15; *see also* Agreed Facts, ECF 69 at ¶ 18. Ms. Brown did not answer and walked towards the back of her cell with her food tray. Ex. 6 at 00:16–:20; *see also* Agreed Facts, ECF 69 at ¶ 18. He said, "Okay" and walked away from her cell to continue handing out trays. Ex. 6 at 00:20–:43.

Later that day, while again handing Ms. Brown her meal tray, Ms. Brown said: "Call me an ambulance, call me an ambulance. Now." Pl. Am. Resp. to County MSJ, ECF 87, Ex. 7 at 00:09–:11; *see also* Agreed Facts, ECF 69 at ¶ 20. Deputy Bunch responded: "It's not going to happen ma'am." Ex. 7 at 00:14–:15; *see also* Agreed Facts, ECF 69 at ¶ 20. She again said: "Call me an ambulance." Ex. 7 at 00:15–:16. He said "No," and walked away. *Id.* at 00:17–:27.

As discussed above, Deputy Bunch may only be held liable for failure to provide medical treatment if he was "aware that an inmate is suffering from a serious acute medical condition."

*Sandoval*, 985 F.3d at 680. Plaintiff offers no evidence that Deputy Bunch was aware of any of Ms. Brown's medical conditions, or that he observed or was aware of any facts from which a reasonable officer would have concluded that Ms. Brown was at "substantial risk" of serious harm. *Gordon*, 888 F.3d at 1125. Plaintiff argues that the record supports an inference that Corporal Jump told Deputy Bunch of Ms. Brown's alcoholism. Pl. Am. Resp. to County MSJ, ECF 87 at 10. But such "speculation does not create a factual dispute." *Witherow v. Paff*, 52 F.3d 264, 266 (9th Cir. 1995). As to causation, Plaintiff's experts offer no suggestion as to how Deputy Bunch's actions contributed to Ms. Brown's death. Notably, although Deputy Bunch declined to call an ambulance for Ms. Brown, she was seen by a nurse that same day. Agreed Facts, ECF 69 ¶ 22. Further, the parties agree that the cause of Ms. Brown's death was acute cardiac arrhythmia or dysrhythmia, not alcohol withdrawal or complications of liver cirrhosis. There are no facts in the record that support the inference that either Corporal Jump or Deputy Bunch delayed medical care or withheld necessary medical care from Ms. Brown, knowing or believing that she was at serious risk of harm.

### b. Qualified Immunity

For the reasons stated above, this Court concludes that neither Corporal Jump nor Deputy Bunch violated Ms. Brown's constitutional rights. Under these circumstances, this Court need not reach the issue of qualified immunity. *See Jackson v. City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001). However, in the alternative, this Court holds that, even if Corporal Jump and Deputy Bunch violated Ms. Brown's constitutional rights, based on the record before this Court, they would be entitled to qualified immunity because they did not violate clearly established law.

A defendant is entitled to qualified immunity unless the defendant "(1) violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct 'was clearly established at the time.'" *See District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting

*Reichle v. Howards*, 566 U.S. 658, 664 (2012)). As discussed above, Plaintiff has failed to demonstrate that either Corporal Jump or Deputy Bunch violated a constitutional right. But for the reasons discussed below, even if they did violate a constitutional right, that right was not clearly established at the time of the violation such that they would be entitled to qualified immunity.

### i.   Qualified Immunity Standard

For a right to be clearly established, it must be "sufficiently clear that every reasonable official would understand that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle*, 566 U.S. at 664).

The Supreme Court has "repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." *City & Cnty. of S.F. v. Sheehan*, 575 U.S. 600, 613 (2015) (citations omitted). Although this does "not require a case directly on point," it does require existing precedent—either controlling authority or a robust consensus of persuasive authority—to have "placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citations omitted). That precedent "must be 'particularized' to the facts of the case." *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *see also Wesby*, 138 S. Ct. at 591 (stating that this requirement calls for "a high 'degree of specificity'" (quoting *Mullenix*, 577 U.S. at 13)).

Whether a constitutional right is clearly established is a question of law. *Gordon II*, 6 F.4th at 968 (9th Cir. 2021). This is an objective inquiry that "compares the factual circumstances faced by the defendant to the factual circumstances of prior cases to determine whether the decisions in the earlier cases would have made clear to the defendant that his conduct violated the law." *Sandoval*, 985 F.3d at 674.

PAGE 13 – OPINION AND ORDER ON SUMMARY JUDGMENT

## ii. Application

To defeat qualified immunity, the plaintiff bears the burden of "point[ing] to prior case law that articulates a constitutional rule specific enough to alert these officers in this case that their particular conduct was unlawful." *Sharp v. Cnty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017). Plaintiff points to case law generally establishing Ms. Brown's right as a "right to medical treatment as a pretrial detainee" and holding that a prison official who fails to respond to an inmate's "serious acute medical condition," including complications relating to alcohol abuse, violates that right. Pl. Am. Resp. to County MSJ, ECF 87 at 11 (citing *Sandoval*, 985 F.3d at 667). But this right is contingent on the officer being "aware that an inmate is suffering from a serious acute medical condition." *Sandoval*, 985 F.3d at 680. Plaintiff does not point to any clearly established law that would have put the individual defendants on notice that their actions, described above, "presented such a substantial risk of harm to [Ms. Brown] that the failure to act was unconstitutional." *Id.* at 678 (quoting *Horton ex rel. Horton v. City of Santa Maria*, 915 F.3d 592, 600 (9th Cir. 2019)).

Existing case law is "simply too sparse, and involve[s] circumstances too distinct," for Plaintiff to carry her burden here. *Id.* (quoting *Horton*, 915 F.3d at 601–02). Existing Ninth Circuit cases on medical care for pretrial detainees broadly fall into three categories: (1) cases where prison officials failed to adequately screen pretrial detainees, *see, e.g.*, *Gordon v. Cnty. of Orange* (*Gordon II*), 6 F.4th 961, 971 (9th Cir. 2021), (2) cases where jail staff failed to provide "life-saving measures" to inmates in "obvious need" of aid, *see, e.g.*, *Russell v. Lumitap*, 31 F.4th 729, 741–43 (9th Cir. 2022); *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1082 (9th Cir. 2013), and (3) cases where the officers know of a serious condition but "deny, delay, or intentionally interfere" with needed treatment, *see, e.g.*, *Sandoval*, 985 F.3d at 679 (quoting

*Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)); *Clement v. Gomez*, 298 F.3d 989, 904 (9th Cir. 2002).

Even viewing the facts in the light most favorable to Plaintiff, these cases are not analogous to the circumstances that confronted Corporal Jump and Deputy Bunch. Plaintiff does not dispute that Ms. Brown received two medical screenings on the date of her booking, Agreed Facts, ECF 96 ¶¶ 6–10, and does not argue that Corporal Jump or Deputy Bunch, corrections officers, were constitutionally required to conduct further screening. *See* Pl. Am. Resp. to County MSJ, ECF 87, at 7–13. And indeed, Corporal Jump referred Ms. Brown to medical professionals. Likewise, while Ms. Brown had a right to medical care for a serious condition, Plaintiff cannot show that Ms. Brown was in "obvious need" of life-saving aid during her interactions with these officers, such that either Corporate Jump or Deputy Bunch should have called an ambulance or engaged in other life-saving measures.

Plaintiff, citing *Sandoval*, attempts to frame her claim as falling into the third category, but this is not a good fit either. While Plaintiff is correct that a prison official violates the Constitution "when he stands idly by" while knowing that "an inmate is suffering from a serious acute medical condition," *Sandoval*, 985 F.3d at 679–80, and that alcohol withdrawal may be a serious medical condition, *see* Pl. Am. Resp. to County MSJ, ECF 87 at 11 (citing *Gordon II*, 6 F.4th at 961 n.5), Plaintiff cannot prove that either of the individual officers stood idly by in response to Plaintiff's condition. In *Sandoval*, a nurse was informed that a patient needed a check but performed only a ten-second blood test. 985 F.3d at 680. In *Clement*, the officer knew the inmates had been exposed to pepper spray but refused to allow them to shower. 298 F.3d at 902. Here, by contrast, neither Corporal Jump nor Deputy Bunch can be reasonably said to have knowingly denied, delayed, or interfered with Ms. Brown's medical care under the *Sandoval*

standard. Instead, Corporal Jump responded to Ms. Brown's complaint by promptly referring her case to jail medical officials. Deputy Bunch asked Ms. Brown why she needed medical care, and, since she did not answer him or display any signs of a serious medical need, did not call her an ambulance. This is not the sort of reckless disregard that the Ninth Circuit has previously held to violate clearly established law. *Cf., e.g.*, *Beavers v. Edgerton*, 773 F. App'x 897, 898 (9th Cir. 2019) (concluding officer who "refused to get [plaintiff] medical care" for an "obvious" injury and "instead left him chained to a bench for twelve hours" was not entitled to qualified immunity). Neither Corporal Jump nor Deputy Brown denied or interfered with Ms. Brown's care in a way similar to the officials in *Sandoval* and the cases it cites. They were therefore not on notice that their conduct could violate the Constitution and are therefore entitled to qualified immunity under current Supreme Court precedent. *Mullenix*, 577 U.S. at 11.

### 2. Sheriff Pixley

Summary judgment is also warranted on Plaintiff's § 1983 claim against Sheriff Pixley. Plaintiff sues Sheriff Pixley only in his official capacity, and she analyzes Sheriff Pixley's conduct alongside the County's under the *Monell* framework, rather than asserting a theory of supervisory liability. *See* Pl. Am. Resp. to County MSJ, ECF 87 at 14, 20.

Section 1983 claims against government officials in their official capacities "are really suits against the governmental employer because the employer must pay any damages awarded." *Butler v. Elle*, 281 F.3d 1014, 1023 n.8 (9th Cir. 2002) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)). A sheriff overseeing and managing a local jail acts on behalf of a county, and may be subject to liability in his official capacity under § 1983 if an official policy or practice "caused the particular constitutional violation at issue." *Streit v. Cnty. of L.A.*, 236 F.3d 552, 561 (9th Cir. 2001); *see Monell*, 436 U.S. at 690–91.

Plaintiff brings a *Monell* claim against the County directly in addition to her claim against Sheriff Pixley. "[W]hen both a local government officer and the government entity are named in an action under section 1983, and an officer is named in their official capacity only, the officer is a redundant defendant and should be dismissed upon the request of the defendant." *Luke v. Abbott*, 954 F. Supp. 202, 203 (C.D. Cal. 1997) (citing *Vance v. Cnty. of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996)). Because the County has requested as much, the Court will dismiss Sheriff Pixley as a redundant defendant.

### 3. Columbia County

Summary judgment is warranted on the § 1983 claim against Columbia County because Plaintiff has not established that her rights were violated pursuant to a municipal policy or custom.

Under *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978), a municipality may be held liable under 42 U.S.C. § 1983 for a violation of a constitutional right. To impose *Monell* liability, Plaintiff must prove: (1) Ms. Brown was deprived of a constitutional right; (2) the municipality had a policy; (3) that policy amounts to deliberate indifference to Ms. Brown's constitutional right; and (4) the policy was "the moving force behind the constitutional violation." *Gordon II*, 6 F.4th at 973. A "policy" sufficient to support a *Monell* claim may be an official policy, a "pervasive practice or custom," or a "decision or act by a final policymaker." *Horton*, 915 F.3d at 602.

On the first element, as discussed above, Plaintiff has failed to establish that any County official violated her constitutional rights. *Monell* claims "require a plaintiff to show an underlying constitutional violation." *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020); *see City of L.A. v. Heller*, 475 U.S. 796, 799 (1986). While the Ninth Circuit has indicated that *Monell* liability may be possible "even in situations in which no individual officer is held

liable," *Horton*, 915 F.3d at 604, such as when the municipal policy itself is unconstitutional, Plaintiff does not explain how this exception applies here. Nonetheless, even assuming Plaintiff could establish a constitutional violation by a County official, Plaintiff's theories of *Monell* liability fail on alternative grounds as explained below.

Plaintiff advances two theories of *Monell* liability. First, she argues that Columbia County had a pervasive practice or custom of denying pretrial detainees medical treatment, pointing to six distinct incidents where County staff were allegedly indifferent to Ms. Brown's medical needs. Pl. Am. Resp. to County MSJ, ECF 87 at 14–15. Plaintiff identifies three other incidents involving other inmates that she argues further demonstrate this practice or custom. *Id.* at 16. Second, Plaintiff argues that Ms. Brown's injuries resulted from Columbia County's decision to understaff the jail, which is a decision by a final policymaker. *Id.* at 17–20.

Neither of Plaintiff's theories is sufficient to support a *Monell* claim under the facts of this case. On her first theory, Plaintiff's evidence is insufficient to establish that Columbia County has a policy or custom of denying necessary medical treatment to pretrial detainees. On her second theory, she fails to establish that Columbia County's staffing decisions reflect deliberate indifference to the alleged violation of constitutional rights.

### a. Practice or Custom of Denying Medical Treatment

A governmental policy is "a deliberate choice to follow a course of action . . . by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). One method of establishing a policy is by showing the alleged constitutional violation was done in accordance with the government's "longstanding practice or custom." *Gordon*, 6 F.4th at 973. This requires more than "a single incident," *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion), or "isolated or sporadic incidents," *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

Rather, the plaintiff must show "practices of sufficient duration, frequency and consistency" to suggest that such "conduct has become a traditional method of carrying out policy." *Id.*

Plaintiff argues that she has established a pervasive practice or custom of the County failing to assist and being deliberately indifferent towards inmates suffering from serious medical needs by pointing to three prior lawsuits, as well as six instances in this case. Pl. Am. Resp. to County MSJ, ECF 87 at 14–17. County Defendants argue that Plaintiff cannot rely on incidents from this case and that her other cited incidents are "unproven (or disproven) claims, none of which bear any resemblance to the facts of this case." County Reply, ECF 89 at 11–12.

Plaintiff states that "[t]his case alone demonstrates no less than six such instances" of deliberate indifference towards a serious medical need. Pl. Am. Resp., ECF 87 at 14. This Court considers these incidents. *Nyarecha v. Cnty. of L.A.*, No. 23-55773, 2024 WL 4511616, at *2 (9th Cir. Oct. 17, 2024) (reversing district court and holding that twenty-six incidents over a thirteen-hour period in plaintiff's own case were sufficient to establish a custom under *Monell*). But as discussed in this opinion, these incidents fail to provide evidence of deliberate indifference.

Plaintiff points this Court toward *Self v. Columbia County*, No. 3:20-CV-00584-BR. Pl. Am. Resp. to County MSJ, ECF 87 at 16. *Self* settled shortly after the court granted in part and denied in part the defendants' motion for summary judgment. *Self v. Columbia Cnty.*, No. 3:20-CV-00584-BR, ECF 56, 65. Plaintiff argues that, in *Self*, the plaintiff was released from jail while injured, without being taken to the hospital. Pl. Am. Resp. to County MSJ, ECF 87 at 16. Plaintiff presumably draws these facts from the opinion ruling on the motion for summary judgment, which was written in the light most favorable to the plaintiff. Plaintiff has failed to establish that the settlement contained any admission of liability, so this case cannot be said to be

an incident of Columbia County being deliberately indifferent to a serious medical need. *See*

*Darden v. City of Berkeley*, 12 F.3d 1105 (9th Cir. 1993) ("The mere existence of the claims [by

others against the City], however, is not evidence of a pattern or practice condoned by the

City."). The Court therefore cannot treat the *Self* case as evidence of a county policy.

Plaintiff then points this Court to an electronic exhibit from the plaintiff's brief in the *Self*

summary judgment motion for the proposition that "[c]orrections officers refused to stop an

inmate from seriously harming or killing himself." Pl. Am. Resp. to County MSJ, ECF 87 at 16.

The Court was unable to locate this exhibit, but there is uncontroverted evidence that "[i]n 2020

. . . there had been an incident in the Columbia County Jail involving an inmate who had tried to

hang himself while corrections officers looked on and did not intervene." Declaration of Jacob

Johnstun ("Johnstun Decl."), ECF 87-1 ¶ 4. Evidence that jail officers failed to intervene under

those circumstances, however, does not establish that any de facto policy of deliberate

indifference to medical needs governed officers' response to Ms. Brown's requests for aid.

Plaintiff additionally cites two of her exhibits for the proposition that "Columbia County

corrections officers failed to intervene when William Derby, a mentally ill inmate, starved

himself for twelve days by refusing twenty-four out of thirty-six meals. A Multnomah County

jury found that Columbia County was negligent for failing to adequately train staff regarding

mental illness. Columbia County has appealed that verdict." Pl. Am. Resp. to County MSJ, ECF

87 at 16 (citations omitted). The cited exhibits appear to be deposition testimony and the jury

verdict from this case. Derby Trial Transcript, ECF 87-9; Derby Verdict Form, ECF 87-10.

No reasonable jury "would find three incidents out of thousands of requests for medical

treatment," in addition to Ms. Brown's own case, "sufficient to establish a 'persistent and

widespread' custom that constitutes a 'permanent and well settled . . . policy.'" *Self v. Columbia*

*Cnty.*, No. 3:20-CV-00584-BR, 2021 WL 2875659, at *12 (D. Or. July 8, 2021) (citation omitted). The uncontroverted evidence is that, "[i]n 2020, the Columbia County Jail housed 1,723 inmates and those inmates made 1,378 requests for medical services." Pixley Decl., ECF 80 ¶ 11. Although the numbers in the *Self* case were higher, the principle remains true that four cases over a few years is not "of sufficient duration, frequency and consistency" to establish a municipal practice or custom.

### b. Deliberate Understaffing by a Policymaker

Alternatively, *Monell* liability may be established when "the individual who committed the constitutional tort was an official with final policy-making authority," or such an official "ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992). Plaintiff argues that "inadequate corrections staffing" was pursuant to a decision of a final policy maker, that this decision was deliberately indifferent to her constitutional rights, and that it caused Ms. Brown's death. Pl. Am. Resp. to County MSJ, ECF 87 at 17. County Defendants do not contest that Sheriff Pixley was a policymaker responsible for staffing levels. *See* County MSJ, ECF 78 at 23–24; County Reply, ECF 89 at 13–15. But Plaintiff's *Monell* claim under this theory still fails because she cannot establish that the County had a policy of deliberate indifference to any constitutional violations.

A policy amounts to deliberate indifference to a constitutional right when the facts available put the municipality on "actual or constructive notice" that its practice are "substantially certain to result in the violation of the constitutional rights of [its] citizens." *Castro*, 833 F.3d at 1076 (quoting *City of Canton v. Harris*, 489 U.S. 378, 396 (1989) (O'Connor, J., concurring)); *see also Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997) (explaining that this requires "proof that a municipal actor disregarded a known or obvious consequence of his action"). Plaintiff argues that Sheriff Pixley was deliberately indifferent

because he "chose to understaff his jail" despite his awareness of "prior instances of deliberate indifference towards other inmates." Pl. Am. Resp. to County MSJ, ECF 87 at 19. But Plaintiff has failed to show deliberate indifference because she has failed to establish that Sheriff Pixley knew that the County's staffing levels were "substantially certain to result in inmates failing to receive the proper treatment, creating a likelihood of serious injury or death." *Sandoval*, 985 F.3d at 682–83 (quoting *Castro*, 833 F.3d at 1076) (internal quotation marks omitted).

Plaintiff points to two tort claim notices and the same portion of the Johnstun Declaration describing an inmate's suicide attempt. Pl. Am. Resp. to County MSJ, ECF 87 at 19. The tort claim notices are not material to Sheriff Pixley's knowledge or constructive knowledge of understaffing risks as the notices do not allege understaffing. Self Tort Claim Notice, ECF 87-12; Derby Tort Claim Notice, ECF 87-13. The suicide attempt is also not material because Plaintiff has not provided evidence that the Jail was understaffed at the time. In fact, the Jail was sufficiently staffed for corrections officers to "look[] on" as it occurred. Johnstun Decl., ECF 87-1 ¶ 4. This evidence is insufficient to proceed to trial.

## D.  Wrongful Death Claims

Plaintiff brings state law wrongful death claims based on negligence against all County Defendants. Generally, a negligence claim under Oregon law requires a plaintiff to prove that the defendants' conduct "created a foreseeable and unreasonable risk of legally cognizable harm to the plaintiff and that the conduct in fact caused that kind of harm to the plaintiff." *Sloan ex rel. Sloan v. Providence Health Sys.-Or.*, 364 Or. 635, 643 (2019). A claim based on an inmate-jailor relationship, however, involves a "relationship . . . that creates, defines, or limits the defendant's duty." *Fazzolari ex rel. Razzolari v. Portland Sch. Dist. No. 1J*, 303 Or. 1, 17 (1987); *see Hanington v. Multnomah Cnty.*, 593 F. Supp. 3d 1022, 1044 (D. Or. 2022). In such cases, the foreseeability analysis is replaced by a duty-breach analysis that requires Plaintiff to prove: (1) a

duty that runs from the defendant to the plaintiff; (2) a breach of that duty; (3) a resulting harm to the plaintiff measurable in damages; and (4) a causal link between the breach of duty and the harm. *Smith v. Providence Health & Servs.*, 361 Or. 456, 460 (2017).

Plaintiff must establish causation by a "reasonable probability," meaning that "the defendant's negligent act or omission more likely than not brought about the death of the decedent." *Joshi v. Providence Health Sys. of Or. Corp.*, 342 Or. 152, 159 (2006). Oregon law does not require that defendants have been able to predict "the actual sequence of events," *Fazzolari*, 303 Or. at 13, or that they "precisely forecast a specific harm to a particular person," *Piazza v. Kellim*, 360 Or. 58, 80 (2016). At the summary judgment stage, Plaintiff "need only produce evidence of a genuine dispute of material fact that could satisfy the preponderance of the evidence burden at trial." *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).

Plaintiff has not offered sufficient evidence to maintain a wrongful death claim against the County Defendants, who are thus entitled to summary judgment. While the individual County Defendants are proper parties under the Oregon Tort Claims Act ("OTCA"), there is insufficient evidence that any County Defendant foreseeably caused Ms. Brown's death.

County Defendants first argue that the wrongful death claims against Sheriff Pixley, Corporal Frazier, Corporal Jump, and Deputy Bunch should be dismissed because they are "are not the proper parties" under the OTCA, which provides that a public body should be substituted as a party for its individual employees if a plaintiff alleges damages below the statutory tort damages cap. County MSJ, ECF 78 at 25 (citing ORS 30.265(3)). County Defendants contend that "Plaintiff's alleged damages do not exceed the tort cap." *Id.*

"Courts of this District have routinely held that, absent the allegation of a specific dollar amount equal to or less than the required amount, defendants may not rely on ORS 30.265(3) to

compel substitution of a public body in place of individual defendants." *Flores v. Or. Dep't of Corr.*, No. 2:22-cv-01339-SB, 2024 WL 2300771, at *7 (D. Or. May 21, 2024) (quoting *Monson v. Oregon*, No. 6:22-cv-00604-AA, 2023 WL 6174382, at *2 (D. Or. Sept. 22, 2023)). Plaintiff does not specify an amount of damages. Fourth Am. Compl., ECF 43 ¶ 46 (alleging damages in "an amount to be proven at trial"). While Plaintiff would "eventually have to allege damages that exceed the appliable cap" to maintain suit against the individual County Defendants, Plaintiff is not required to do so to survive summary judgment. *Achcar-Winkels v. Lake Oswego Sch. Dist.*, No. 3:15-cv-00385-YY, 2017 WL 2291338, at *10 (D. Or. May 25, 2017). This Court will not substitute the County for the individual defendants.

In any event, the County Defendants are entitled to summary judgment on the merits. Under Oregon law, jail deputies owe a duty of care to pretrial detainees, such that they are obligated to "care for the prisoners in their custody and generally protect them from harm." *Hanington*, 593 F. Supp. 3d at 1044 (quoting *Crane v. United States*, No. 3:10-cv-00068-AC, 2013 WL 1453166, at *5 (D. Or. Mar. 21, 2013); *see also* O.R.S. 169.140 ("[L]ocal correctional facility shall . . . supply . . . necessary medical aid."). This duty, however, extends only to harms that were "reasonably foreseeable." *Or. Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or. 329, 341 (2004). Because the harms to Ms. Brown were not foreseeable, the County Defendants did not breach their duty of care.

Plaintiff argues that County Defendants breached their duty to Ms. Brown in four ways, based on the report of their corrections expert, Phil Stanley.[3] Plaintiff argues that (1) the jail

---

[3] County Defendants argue that Plaintiff's expert "cannot establish or prescribe a legal duty (or duties) to which County Defendants were bound" because the Court must look to the common law to determine the duties. County Reply, ECF 89 at 17. This Court understands Mr. Stanley to be properly opining on the standard of care in the industry.

failed to "have policies and procedures for inmates or staff to bring inmate health care needs and complaints to the attention of the health care provider for a timely response"; (2) "correctional personnel" failed to "be aware of the potential for emergencies that may arise, know the response to life threatening situations, and understand their part in the early detection of illness and injury"; (3) "custody and health staff[]" failed to deliver health care as a "joint effort"; and (4) correctional staff failed to place Ms. Brown on a withdrawal protocol as required under state and federal law. Pl. Am. Resp. to County MSJ, ECF 87 at 21–22 (quoting Report of Phil Stanley, ECF 87-6 at 7–8). Plaintiff does not, however, explain how Ms. Brown's death was foreseeable.

No reasonable jury could find from this record that an officer would have known that Ms. Brown was likely to die from cardiac arrhythmia, as opposed to complications related to alcohol withdrawal, if the above actions were not taken. Plaintiff's own expert notes that Ms. Brown's symptoms were "seemingly innocuous" and "not typically accompanied by signs of distress." Report of Victor Vines, ECF 87-4 at 5–6. Plaintiff does not identify how Ms. Brown's risk of cardiac arrythmia was unreasonably created by the officers not closely monitoring Ms. Brown for detox, officers not jointly delivering health care or playing a part in early illness detection, or the Jail not having a healthcare request procedure.

Plaintiff has also failed to provide sufficient evidence of causation as a matter of law with respect to Corporal Frazier and Sheriff Pixley. As to Corporal Frazier, this Court cannot make a speculative leap that, if Ms. Brown had been able to make a phone call, she "would have succeeded in posting bail and most likely would have gone to a hospital." Pl. Am. Resp., ECF 87 at 22. Plaintiff also has not shown that Ms. Brown's death was causally connected with any understaffing approved by Sheriff Pixley. Plaintiff has thus not provided sufficient evidence to show that County Defendants were negligent.

**E. ADA Claims**

Finally, Plaintiff asserts a claim under Title II of the Americans with Disabilities Act ("ADA") against the County, alleging that the County intentionally discriminated against her on the basis of her poor hearing by failing to replace her hearing aid batteries. Fourth Am. Compl., ECF 43 ¶¶ 57–60. Plaintiff's theory is that, had jail staff replaced Ms. Brown's hearing aid batteries or otherwise assisted her in using a telephone, she could have posted bail and sought medical attention from a hospital that would have prevented her death. *Id.* ¶ 59. Plaintiff seeks non-economic damages. *Id.* ¶ 60; Brief, ECF 96. This Court will grant summary judgment to the County on this claim because Plaintiff lacks standing.[4] *See Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002) (holding that courts have "both the power and the duty" to raise standing sua sponte).

To establish standing to bring an ADA claim, Plaintiff must satisfy the familiar requirements of injury, causation, and redressability. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). In this case, Plaintiff cannot establish causation. Plaintiff stated in her brief and reaffirmed at oral argument that Plaintiff's theory is that the alleged ADA violation caused Ms. Brown's death, reasoning that, had Ms. Brown "been able to contact her sister, Ms. Brown would have succeeded in posting bail and most likely would have gone to a hospital." Pl. Resp. to County MSJ, ECF 87 at 31. But "Article III standing requires more than an elaborate string of speculations." *City of Oakland v. Oakland Raiders*, 20 F.4th 441, 464 (9th Cir. 2021) (Bumatay,

---

[4] Plaintiff also brings a Title II claim against Sheriff Pixley in his official capacity. A suit against a defendant in his official capacity is simply another way of pleading an action against his employer. *See Graham*, 473 U.S. at 166. Plaintiff's ADA claim against Sheriff Pixley in his official capacity is effectively a suit against the County, so this Court will dismiss it as duplicative. *See Becker v. Oregon*, 170 F. Supp. 2d 1061, 1066 (D. Or. 2001) ("Although individual defendants may not be sued in their individual capacities under Title II of the ADA, they may be sued in their official capacities because suing an individual in his official capacity is treated the same as suing the entity itself."); *Luke*, 954 F. Supp. at 204.

J., concurring). Plaintiff has failed to provide sufficient evidence from which this Court could make a series of inferences that, had Ms. Brown been able to use the jail phone, she (1) would have paid her bail, (2) would have done so reasonably quickly, (3) would then have gone to the hospital, and (4) that she would have received treatment at the hospital that likely would have prevented her death. This Court cannot conclude that Ms. Brown's death is fairly traceable to her alleged exclusion from the jail's phone system.

Plaintiff also separately lacks standing because she cannot establish redressability. Plaintiff seeks only emotional distress damages on her ADA claim. Brief, ECF 96. Such damages are not available under the ADA. In *Cummings v. Premier Rehab Keller, P.L.L.C.*, the Supreme Court held that "emotional distress damages are not recoverable" under section 504 of the Rehabilitation Act. 142 S. Ct. 1562, 1576 (2022). Title II of the ADA expressly incorporates the remedies of the Rehabilitation Act. *See* 42 U.S.C. § 12133 (providing that the "remedies, procedures, and rights" set forth in the Rehabilitation Act are the same remedies available under Title II). Because emotional distress damages are not recoverable under the Rehabilitation Act, such damages are not recoverable under Title II.

Plaintiff argues that the rationale of *Cummings* does not extend to the ADA because *Cummings* only applied to statutes enacted under the Spending Clause and the ADA was enacted under Section Five of the Fourteenth Amendment. Pl. Am. Resp. to County MSJ, ECF 87 at 32. But the remedies the ADA offers "are the same" as those of the "Rehabilitation Act, which *is* Spending Clause legislation," so "discussion of the ADA's status as a 'non Spending Clause' tort statute [is] quite irrelevant." *Barnes v. Gorman*, 536 U.S. 181, 189 n.3 (2002) (emphasis in original). Although there is no Ninth Circuit case directly on point, *see Bell v. Williams*, 108 F.4th 809, 892 n.2 (9th Cir. 2024) (noting that the availability of emotional distress damages

under the ADA is an "open question in this Circuit"), most courts to address the question post-*Cummings*, including this Court, have held that emotional distress damages are not available under the ADA. *See Gillette v. Oregon*, No. 3:20-cv-00513-IM, 2022 WL 2819057, at *7 n.5 (D. Or. July 19, 2022) (noting that, after *Cummings*, "Plaintiff may no longer recover for emotional damages" on her ADA claim); *A.W. ex rel. J.W. v. Coweta Cnty. Sch. Dist.*, 110 F.4th 1309, 1314 (11th Cir. 2024) (same); *Doherty v. Bice*, 101 F.4th 169, 173–74 (2d Cir. 2024) (same); *Payan v. L.A. Cmty. Coll. Dist.*, No. 17-cv-1697, 2024 WL 1676846, at *2 (C.D. Cal. Feb. 29, 2024) (noting that the "law clearly prohibits" emotional distress damages under Title II); *Montgomery v. District of Columbia*, No. 18-1928, 2022 WL 1618741, at *24 (D.D.C. May 23, 2022). Plaintiff does not seek injunctive or declaratory relief or nominal damages, *see* Fourth Am. Compl., ECF 43 at 18, and has clarified that she does not seek economic damages, *see* Brief, ECF 96. Because Plaintiff only seeks a remedy that is not available to her, she has failed to establish standing.

**F.  Punitive Damages**

County Defendants moved for summary judgment on Plaintiff's request for punitive damages. County MSJ, ECF 78 at 32–33. In light of this Court's determination that Plaintiff's claims against Corporal Jump, Deputy Bunch, Sheriff Pixley, and Corporal Frazier fail as a matter of law, this Court need not address punitive damages.

## CONCLUSION

The County Defendants' Motion for Summary Judgment, ECF 78, is GRANTED. This case is STAYED as to Wellpath Defendants. Wellpath Defendants are ORDERED to file a status report on the status of the bankruptcy proceeding in sixty (60) days and every sixty (60) days thereafter.

**IT IS SO ORDERED.**

DATED this 20th day of February, 2025.


/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge